This is 25-4041 Carlson v. Carrington Square. Yes, sir, good morning, your honors. My name is Amanda Reynolds. I have the honor of representing Danny Carlson in this case pro bono. He is an individual who is humbled by multiple sclerosis. He, on May 7, 2021, fell in his bathroom as a result of the absence of grab bars in his bathroom. He was later evicted constructively from his apartment on July 30th under the guise of a construction remodeling project. The district court dismissed our case outright, carte blanche. We argue that they were erroneous in nearly every single holding against us and their failure to render holdings on certain cases, including the expert testimony, preclusion motions, and the motions to compel. As a matter of housekeeping, the district court held in favor of the defendants, respondents in this case, with respect to local rules that allegedly weren't followed or were violated by the plaintiff, including in the motions to compel, claiming that we didn't comply with the word count certification or the word count whatsoever. You make some extraordinary claims in your brief. In particular, are you alleging that the district court was biased in its ruling against your client? And if so, I was wondering what parts, you know, what evidence was produced or what part of the record would demonstrate that? Back up that. Sure, and yes, we're arguing that the district court was biased. We were confronted, when I brought this case, I was not aware that the Collinmore defendants were politically affiliated in Utah. And I also didn't know that I wouldn't be able to refer to any other attorneys in Utah because there simply are none who would take this case. Why is that relevant? It's relevant because these Collinmore defendants also represent 80% of the landlord defendants. Their lease in Utah is unconscionable, yet it's accepted by Utah courts everywhere. It should not be enforced, and it is. Nobody understands why it's enforced. There should be a class action to render it inherently unconscionable. You've sued lawyers in a law firm here. Yes. What's the factual basis for that claim? We sue them under a third-party beneficiary theory because in Conlin v. Collinmore defendants, they've been sued before for this reason, and the court found that they had a duty to these plaintiffs who were tenants under the third-party beneficiary theory because they are in a unique position as the so-called kings of eviction debt collectors in Utah for drafting and advising Utah landlord tenants as to how to essentially amass fees and collect fees that are not necessarily warranted, and then to evict their unwanted tenants. Is there a Utah case that supports that third-party beneficiary? Yes. In the case Conlin v. Collinmore defendants in which they were sued, the court ultimately dismissed the motion for summary judgment, but found that there was a duty, and there was causation against these defendants, so they were on notice that they were and had a duty under a third-party beneficiary theory. This is not news to these defendants, which is why- Can I stop you for a minute? I'm interested in the case you just mentioned, and I didn't quite get the name. The case that- Conlin v. Collinmore. C-O-N-L-I-N? Yes, sir. The- Collinmore, the defendants' respondents here, C-U-L-L-I-M-O-R-E. Okay, and that's a Utah State case? Yes, sir. Okay, thank you. Thank you.  So really, I would rather just be of service to the court and answer any questions that you might have, but there are some points of clarification that I do have with respect to the brief that I just want to point out expediently, if I may. Under McDonnell-Douglas, a burden-shifting framework, defendants allegedly- Well, defendants proffered a pretext. The district court found that it wasn't pretext. We're saying that it is. The district court then went beyond the province of the court, and instead of remanding it or permitting it to proceed to trial through a jury, made its own assessment as to whether or not it was pretext. So right here, are you talking about your fair housing claim or your ADA claim? Both of them. Both of them, okay. So they, we have essentially defendants who said to my client, we don't have an apartment for you to rent because we know you're handicapped, but we gave it to someone else four days later, right before we evicted you, without giving you sufficient notice, because there's no such thing as sufficient notice when you're evicting someone on the basis of discrimination. And then the district court refused to grant our motion to compel on the basis of some Utah local rule, which they then used in favor of the defendants, and claimed that we had no evidence in support. But we have hundreds of thousands of pages of evidence. We also had affidavits, declarations of my client, and his testimony is evidence. So why I think the district court, if they're not biased, might be a little confused is because we supported everything. And perhaps in reviewing- Your brief in this court seemed to not give us, it was kind of hard to find in the record because you didn't give citations to where we would find these. It made it really difficult for us to follow your argument. I'm sorry. I think, I'm sorry for any difficulty I caused you in not being able to follow my argument, but I think where I rested was mostly on my papers. I don't think I could have argued any more arguments. And that's why it's also baffling. Then I did, in my motions to summary judgment and my oppositions, in the over 200 pages of argument, and none of those arguments were accepted by the court. It's insane. And even if the arguments weren't accepted, certainly there had to be an issue of fact somewhere, which we don't think there is an issue of fact. We think that everything should have been ruled in our favor, but at the very least, you could have said that there is an issue in fact because we say there is discrimination and they say that there's not. Yeah, but our rules require you in your opening brief here to cite to specific points in the record that support your allegation that there's a fact question. And you didn't do that here, did you? To support the allegations that? Of pretext. Yes, I do believe that I cited to the specifics in the record, oh, I understand what you're saying now. Not in the record, I cited to the specific docket that is correct. So I cited to the docket, not necessarily to the record, if that's what your honor is referencing. And I think that's what the district court may have misunderstood as the absence of evidence in the lower court briefs, where it was my failure to cite to specific pieces of evidence in the argument, but I cited to those pieces of evidence in the statement of facts and in every other area of the brief. So there's not a lack of evidence, there may have been a lack of citation. Can I ask you a question about your ADA claim? There's been, the other side has asserted that the ADA doesn't apply to apartments. Yes. Because they're not public accommodations. Do we have a case on that? Yes, so the, it starts with a P. So the public accommodations case was the one that, you know what, it escapes me offhand the name of the case, but I can tell you also that the 2023 DOJ regulations, which were rendered after those cases which the district court relied upon, rendering them obsolete, indicate and clarify that those cases don't even matter because the DOJ is saying the ADA does apply to these apartment complexes, which are not private, by the way. They're private at the time that the lease is entered into, but at the time that they're held out to the public for rental, they're not private. I mean, they're essentially leasing them to the public and there's a duty to the public to provide, as they are in the common areas, as they are in this courthouse, for the most part, for the most part. Okay, so you just brought up something I was gonna ask you about. So I've seen some ADA cases where they said that the apartment itself is not a public accommodation, but that the common areas, the pool, the clubhouse, all those things are public accommodations. Can you address those, you know, why those cases that make that distinction would be incorrect? Have you seen those cases that make a distinction? Yes, I think, and that's where I was getting to with the discussion of prepossessory interest rights in the property is because there's a difference as to whether they're private or public with respect to who you are framing that in relation to. If it's a tenant who already lives in the apartment versus people who are entering the apartment. And in this case, in private and public places where let's say there's a parking lot, there are a certain number of spaces that are required to be held out for handicapped individuals. That's the same thing with an apartment complex if you're looking at it from the point of construction, which these were undergoing construction, which are supposed to be held out for certain handicapped people. So it's different to say that something is completely private, and that's exactly where we go to the definition because in the private definition, they're talking about places that are exempt because they're under four or three apartments. In this case, we have an apartment complex with hundreds of apartments held out to the public first. We also know that they were being remodeled since after 1998, they hadn't been, and they're required to have certain amenities, including, well, actually, forgive me, it's not an amenity to my client. We call them amenities, but they're not amenities. They're required to have them. So when you say that Danny Carlson wasn't disparately impacted by discrimination by defendants who intentionally gave away an apartment to a non-disabled tenant four days before they evicted him at the threat of not having Section 8 benefits or a place to live, having to go into a hotel, pay with his own money, which he already has none of because he's on federal welfare, the defendants made it sound like he was on vacation, and that's why it's so sad. But I'd like to reserve the rest of my time for rebuttal if that's amenable with the court. Okay, if you may. Thank you. So you're splitting arguments today? Yes, sir. All right, Mr. Barlow first? Yes, thank you. I told Mr. Todd that I would give him exactly half the time. So he didn't want it.  Ha ha ha. Ha ha ha. Your Honors, thank you so much for taking this time to hear these oral arguments on this important case. My name's Pete Barlow, and I'm with the law firm of Strong and Hanney in Salt Lake City, Utah. Here we have a case that involves some federal statutes and state statutes that are designed to be shields and protections for certain people who are disadvantaged. Here we learn what happens when these statutes are not used as shields, but rather are attempted to be used as swords or clubs to gain better or additional benefits that nobody else has. And that's the argument that the Plaintiff, Mr. Carlson, made consistently throughout the lower court proceedings and which continue here today. So I'd like to use an example that's near and dear to my heart. I'm a terrible golfer, and golf has an handicap system where with my handicap, I can play against Scotty Scheffler and lose, but not lose as bad, because of my handicap. And that handicap system allows me to compete on an even playing field, which is a great system. It doesn't allow me to hit a ball into the water and force my playing partner to go into the lake and get my ball for me. It doesn't allow me to force the golf course to give me a free golf cart, because I don't wanna walk. It doesn't allow additional benefits that aren't within the rules of the game. And consistently throughout these arguments, this is what, essentially what Mr. Carlson has argued, that he deserves to be treated better, not equally better. So let me start at the ADA. The ADA simply doesn't apply to private residences or private apartments. I appreciated Judge Carson's questions about the public areas or common areas, because the ADA could be applicable to those areas and cases find that way. Here, what we're dealing with is an individual apartment residence that Mr. Carlson lived in for about six and a half years, and whether he should be able to continue to reside in that residence based on his own demand, again, being treated better. Is there a circuit court case that you're aware of that holds that the ADA is applicable to apartment complexes, or to the apartment itself? The circuit court cases that I'm aware of, including that Phipps versus American Property Management, that's a case by Dee Benson, Judge Benson in Utah, which held that it wasn't applicable. Okay, that would be a district court case. I mean, I'm talking about court of appeals. Court of appeals. In any circuit. Let's see, yeah, there is the Third Circuit, the Regents of Mersenburg College versus Republic Franklin Insurance Company case, held that it is not, the ADA is not applicable to private residences. And frankly, Your Honor, I don't know if it addressed the issue of whether the ADA could be or would be applicable in that case under those facts to a common area. I assume that it would be, actually, but not to private residences and rights to have the ADA apply to residences that only a private individual rents from a private company. Okay. So the distinction is basically based on the definition of public accommodation found in the ADA. And the definitions use terms like hotel, motel, place of lodging, so short-term residences. Here we have the six and a half year lease by Mr. Carlson, obviously long-term. And Judge Shelby was unwilling in the face of no persuasive authority against, well, that he recognized, I'll put it that way and I'll explain what I mean, that the ADA should apply to that particular private residence, which is what the dispute is over. Mr. Carlson claimed that there were DOJ-like regulations or something that were applicable that, I think I just heard today that essentially overruled or superseded the court cases. The way I understand it is the DOJ is the arm of the executive branch, and I hold the judicial branch very dear to my heart. And so the thought of the DOJ being able to overrule any court, to me, seems unfounded. So, but Mr. Carlson failed to cite to evidence in the record that would be able to show that these cases that we've cited in our brief should be disregarded, or a different result should have been reached below in the summary judgment motion. Any questions on the ADM? I was gonna move on to the Fair Housing Act. Okay, thank you. So with regard to the Fair Housing Act, we agree that the Fair Housing Act applies to places like Carrington Square Apartments. And what the plaintiff has alleged is that there was both disparate treatment, so an intentional discrimination that doesn't have to be proven through circumstantial evidence or presumptions or anything like that. Or a disparate impact, which is basically based on the circumstantial evidence, because it is hard to prove discrimination. You don't know what's going on in my mind, I'm afraid, by the way. But you don't have to prove that with the disparate impact arm of this claim. So the district court below, I believe that Judge Shelby, and he expressed this in his opinion, had the same types of concerns that you expressed with Mr. Carlson, that there wasn't proper citation to the record, or that there were citations to claimed evidence that Judge Shelby did not find to be competent evidence. And in terms of determining what evidence is admissible, what evidence is not admissible, those determinations are reviewed under an abuse of discretion standard, which I really haven't seen any argument from Mr. Carlson about. There are many claims that Judge Shelby was biased or prejudiced or whatever the claims are, but the proper standard of review and the reason why the evidentiary decisions were made or not made the way that they were made were not really addressed in the brief. And so to the extent that those arguments weren't briefed, they're waived. With regard to the disparate treatment arm, that goes under the McDonnell-Douglas burden shifting analysis, which requires a plaintiff to set forth his prima facie claim of discrimination, and then the burden shifts to Carrington to submit a legitimate non-pretextual reason for the action. So here, Carrington was involved in a apartment-wide complete renovation of the properties. Carrington was built in 1998. No renovations until about 2021. People were complaining about the outdated styles. I don't get it, but my wife would. And so in order to bring it up to the community standards and protect the investments, they decided to invest millions in this project. And there were declarations, affidavits to that effect, which were not rebutted. In fact, Mr. Carlson seemed to acknowledge that this was a process that was happening. And so Judge Shelby found that that was a legitimate non-pretextual reason. So the burden shifted back to Mr. Carlson to show that the legitimate reasons were pretextual. Now, follow me here. A company spends millions of dollars on a renovation project just to get rid of one disabled tenant that they had been accepting rent from for the last six and a half years. That's, I mean, that's a terrible way to go about that business. And so Judge Shelby rejected that claim of being pretextual. I'm out of time. I need to reserve the rest for my co-counsel. All right. Thank you, your honors. Thank you. Good morning, your honors. May it please the court. My name is David Todd. I am here representing the law offices of Kirk A. Colomore LLC and representing myself, David R. Todd. I'll refer to us as the Colomore defendants. And just would like to point out that the court's ruling, the difficulty with this has been for many years going through this litigation is really trying to pin down exactly what the claims have been against the Colomore defendants and how they're interspersed throughout the pleadings. But I will just address essentially where Judge Shelby got this right. And that is that the Colomore defendants, there was no factual dispute at all that any of the Colomore defendants were housing providers or governed by the Fair Housing Act related to these circumstances. The motions that were filed with the district court provided facts that just were undisputed. And that's been the issue with this case from the beginning is there's just a lack of facts that would support Mr. Carlson's claims against the Colomore defendants. So the undisputed facts show the Fair Housing Act just does not apply in this situation to the Colomore defendants. Also the breach of contract claim in the third, and it initially was, and I can't recall if it was included in the district court case, but it was a theory of third-party beneficiary and fourth-party beneficiary. Essentially Carlson claiming that what had always been claimed to us was that he was claiming that he was somehow a third-party or fourth-party beneficiary of the legal services contract between the Colomore defendants and the Carrington defendants. So your opposing counsel says that in another case with apparently Kaylee Conlin as the plaintiff that a court said that Ms. Conlin was a third-party beneficiary to some contract of yours. Is that true? I don't believe that that's true. And I will admit I haven't read that case in a little bit, but that case would not have had a holding that the client agreement between attorneys and the other party somehow brings in a third-party beneficiary claim. And that's been one of the, again, one of the difficulties with this case is that that's continued to be a claim is this third-party beneficiary claim. And we haven't really been able to nail down is that a claim third-party beneficiary related to the lease agreement between our clients, the Carrington defendants and Mr. Carlson, or is it a claim of third-party beneficiary from the client agreement to provide legal services? And so the Colomore defendants have continued to request some kind of precedent to show that that exists, that there's something out there about a third-party beneficiary where somebody who's an opposing party can come and say, no, I'm a beneficiary to your legal services contract with your client. And really the only, well, maybe not the only, but at least one case that was found that we did include in our motion that Judge Shelby heard and granted was a case in Utah, it's Sunridge Development Corporation versus RB&G Engineering. And that kind of outlines what is needed for a third-party beneficiary claim. And one of the things is that the contract itself has to specifically indicate that there's an intent for that other party to be a beneficiary. And that just does not exist here. What was argued at the motion for summary judgment stage, again, was related to the client agreement between the Colomore defendants and the Carrington defendants. The contract was provided, it was not disputed. That contract, the only written one that existed that was provided was, I believe it was a 2012 contract. That was well before Mr. Carlson was even a tenant at the property. And it would be very unusual to see that Mr. Carlson would have been included in a client services contract like that. So again, it was a little bit difficult to determine which of the claims were all related to the Colomore defendants, but the Fair Housing and ADA, again, the facts were never disputed. At no time has Mr. Carlson made a claim that there are some facts that show that the Colomore defendants were involved in providing housing, denying reasonable accommodation requests, or engaging in any type of negotiation to rent any property. I'm gonna stop there unless the court has any questions. Hearing none, you may be excused, thank you. Thank you. And we had some rebuttal time left. Thank you, your honors. With respect to the Colomore defendants, it's been four years, thousands of pages of briefing and research. And Mr. Todd stands here before you today claiming that he still doesn't understand the allegations against him. That is case in point legal malpractice. And there is evidence that he was working beyond the scope of whatever document he provided that wasn't authenticated. His affidavit wasn't prepared, notarized, sworn to be true, based on personal knowledge, doesn't indicate who he was representing. I advised him that because there were malpractice claims against him, that there was a conflict of interest. He persisted in the representation of these defendants until somehow Mr. Barlow became pretty and is now seated before you, which seems odd. But, and then Mr. Barlow talks about some sort of golfing metaphor. You know, my client can't golf. This isn't about sports metaphors. This is about a client who wasn't being treated better than anyone, he was being kicked while he was down. The salt was being thrown in the wound and he wasn't being treated better than anyone. He was, in fact, being treated worse because they gave a handicapped apartment to someone who was not handicapped four days before they evicted my client, who, if eviction proceedings were commenced against him, would have lost any federal funding that he had and would not have had a place to live. He would have been homeless more than the four day vacation he spent in a hotel. Thank you, your honors. Thank you, counsel. Thank you. Counselor excused and the case is submitted.